OPINION OF THE COURT
Bruce J. Gould, J.
The parties stipulated and agreed before this court on March 4, 1991 that there were no issues of fact. The parties agreed that the legal question is the correct method of calculating the rents applicable to this RPTL 421-a tenancy.
As a condition, petitioner requested that "prior to the Court *540 making any determination that the Court direct Respondent to provide proof of the discontinuance of the DHCR complaints [with regard to alleged rent overcharge and overcharge for security deposit in favor of this court determining the rights, claims and obligations between the parties herein]”. Respondent by letter of July 8, . 1991 has submitted to the court a Division of Housing and Community Renewal order terminating proceedings in that agency in accordance with the parties’ stipulation.
The Department of Housing Preservation and Development (HPD) guidelines, prior to November 19, 1982, stated that an owner of a RPTL 421-a building was entitled to increase annually the rents over a 10-year period to be phased in by 9 annual increments of not more than 2.2% per year.
On November 19, 1982, HPD promulgated new rules and regulations governing the RPTL 421-a program. The amendment of section 4.2 altered the method of calculation for rent increases for these buildings to read in part: "The initial 2.2 percent escalation and all subsequent escalations shall be based solely on the initial adjusted monthly rent and shall not be compounded from year to year but rather shall remain constant based on said initial adjusted monthly rent. In addition, the increase shall be independent of any other escalation authorized by the Rent Guidelines Board and shall not be considered or included when a Rent Guidelines Board increase is effected, making the latter increase effective upon the base rent, excluding the 2.2 percent escalation. The maximum increase permitted by this Section is 19.8 percent over the initial adjusted monthly rental. The maximum, increase permitted by this section may be charged in each year following the expiration of the tax benefit period,[1] but shall not exceed 19.8 percent, or that amount charged in the last year of the exemption period, and shall not become part of the base rent.” (Emphasis added.)
The court determines that the landlord’s calculations covering the period from April 1, 1978 through March 31, 1988 are correct. For the reasons noted below and in the footnote, the court rejects the tenant’s contention that the November 1982 HPD amended regulations are to be construed to remove the 2.2% annual increment from the base rent for the period of this tenant’s occupancy prior to November 19, 1982 and back *541 to the tenancy commencement on April 1, 1978, and furthermore respondent seeks with other adjustments to eliminate totally the tax increments from the collectible rent at the end of the 10-year exemption period.[2]
Two decisions of the New York Conciliation and Appeals Board, brought to the court’s attention by petitioner, are persuasive and controlling (Baum v Ete Co., opn No. 23,373 [Mar. 1, 1984]; Yuspa v Mill Rock Plaza Assocs., doc No. 23,761 [Mar. 28, 1989]) in supporting petitioner’s position that the amended regulations are prospective only.
A review of the narrative and the calculation charts attached to those decisions makes it abundantly clear that the Board determined that the 1982 HPD amended rules and regulations were not to be read to remove the 2.2% annual tax increment from the commencement of respondent’s tenancy, but were to apply only to those leases, annual 2.2% increase and rent guideline increases taking effect on or after November 19, 1982.
To detail the calculation: on March 31, 1988, the base rent is $908.86 and separate 2.2% charge for the nine years totaling $68.75. To arrive at the new collectible rent effective April 1, 1988, the tenant having selected a two-year lease for which RGB No. 19 allowed a 6.5% increase, the new base rent is $967.94 to which the same dollar figure of $68.75 for the 2.2% charges may be added, this increases the rent to $1,036.69.
Petitioner mathematically miscalculated the base rent for the lease term April 1,1988-March 31,1990 "908.86 + 59.08 — 1,027.02”. Therefore, a proper calculation shows a monthly overcharge of $59.08 a month commencing April 1, 1988. The tenant was overcharged a total of $1,417.92 for the 24 months commencing April 1, 1988 through March 31, 1990.
*542 As for the rent effective April 1, 1990, the simple mathematical error is compounded in petitioner’s calculations. The base rent should be $1,055.06 ($967.94 with a 9% increase) plus the tax escalation charge of $68.75 to arrive at a rent-stabilized rent of $1,123.83, rather than the petitioner’s calculation of $1,188.20. This is a monthly miscalculation of $64.37.
The tenant last paid rent for the month of June 1990. Tenant is due rent overcharge of $1,417.92 through March 31, 1990, and an additional three months’ overcharge through June 30, 1990 of $193.11 for a total of $1,611.03.
Respondent’s security on deposit should be $1,123.83 for the period ending March 31,1992.
As stated, to arrive at the collectible rent, the escalation factor is to be added to the base rent to which is then added to the tax adjustment of $68.75 to arrive at the total collectible rent-stabilized rent.
The proceeding is restored for July 22, 1991 for a hearing unless the parties agree in writing to a dollar settlement of this proceeding based on this court’s decision and order.

. The petitioner seeks $68.75 as the total tax escalation. The legal cap would far exceed that figure ($625 X 19.8%).

. The court does not concur with the tenant’s methodology for arriving at the "Lawful Stabilized Rent”. As disclosed on tenant’s exhibit Q, tenant starts with a base rent of $808.01 commencing April 1, 1983 adds $13.75 ($625 X 2.2%) to arrive at the lawful stabilized rent as of April 1, 1983 for this three-year lease renewal. Tenant then adds a 2.2% tax increase to cover the escalating tax burden for 1984 and 1985. But thereafter and consistently so, the tenant fails to carry the already imposed tax escalation portion into each subsequent renewal lease rent-stabilized rent.
While under the amended 1982 HPD regulations the base rent increases for RPTL 421-a tenancies are not to include the tax escalation amount, the tenant takes it a step further by excluding from each succeeding renewal lease rent-stabilized rent the tax escalation amount already included in calculating the stabilized rent. Under the tenant’s methodology once the full tax burden is imposed on the property the tenant is paying none of the taxes.